Harper, J.
The execution is plainly defective in not setting forth the defendant to be a freo negro, mulatto or mustizoe (as wo suppose him to have been.) The tax act which directs such persons to be sold for default of the payment of taxes, gives an extraordinary mode of proceeding, and doubtless the execution itself should shew that the defendant comes within the provisions of the act. None but a free negro, mulatto, or mustizoe are subject to that process.
The tax for which the execution was issued was probably for the capitation tax imposed on these persons by the tax act of 1833. This, however, does not appear from the execution itself; and this is a defect. If, as was suggested in argument, the execution was for a tax on property, then we are of opinion that the defendant was not liable to be sold for payment of that tax. *458 ac*> a^ter imP0SinS taxes generally on property &c., imposes a specific tax of two dollars on all “free negroes, mulattoes and mustizoes.” A subsequent clause declares that “the tax co]]eotora 0f this State are authorized and required to issue their executions against all free negroes, mulattoes and mustizoes, who shall refuse or neglect to pay their tax imposed by this act, directed to the sheriffs of the said State, requiring them to sell for a term not exceeding one year, the service of the said tree negroes, mulattoes and mustizoes, to meet the payment of the tax imposed.” The only tax specifically imposed on these persons by the act, is the capitation tax of two dollars, and to this the clause in question seems plainly to refer. And this construction cannot be varied by the subsequent direction, that the sheriffs shall not sell for a longer term than may be necessary to pay the tees. There is an obvious reason for this. If the defaulter possesses property, the legislature may well have supposed that the tax imposed on it might be made out of the property itself. But most of these persons are idle and dissolute, and possess no property. It was only necessary for securing the payment of the capitation lax imposed on such, that their service should be subjected to sale.
Suppose the execution, however, to be for the capitation tax, we are of opinion that the collector had no right to impose a double tax. It is only where the person fails to malea return of property liable to tax, that the double tax is imposed. By the act of 1788, (2 Brev. Dig. 279, § 8) regulating the subject of taxation generally, it is declared that “in case any person shall neg. lect or refuse to give in his or her account of lands, slaves &c., that the assessors and collectors are required to proceed by double tax;” and by the same (p. 280 § 11) “if the assessors and collectors have not just information what such person’s tax doth amount to, then they shall issue warrants for double what they shall judge such persons ought to be rated.” And by the Act of 1808, p. 39, it is directed, that if any person liable to pay tax shall refuse or neglect to give in his return, the collector shall proceed by a double tax. The act of 1833 says nothing of free negroes, mulattoes or mustizoes, making return of themselves ; but only that if they shall fail to pay the tax imposed, the collector shall issue execution for the tax imposed. He can never want information at what they ought to be rated. The collector is at liberty to issue a proper execution for the single capitation tax ; but with respect to the present execution, the motion must be granted.
Johnson and O’Neall, Js. concurred.